IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NIKOLE O.,**[1]

      **Plaintiff,**

  v.

      Civil Action 2:22-cv-2330
      Judge Edmund A. Sargus, Jr.
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Nikole O., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I. BACKGROUND

Plaintiff protectively filed her application for benefits on April 7, 2020, alleging that she has been disabled since May 8, 2019, due to autonomic nervous system disorder, complex regional pain syndrome (CRPS/RSD), idiopathic peripheral neuropathy, coagulation defect, Lyme disease, lumbar spondylosis, cervical stenosis, erythromelalgia, osteoarthritis, anxiety. (R. at 172-78, 201.) Plaintiff's application was denied initially in August 2020 and upon reconsideration in October 2020. (R. at 57-78, 88-92.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 93-94.) ALJ Noceeba Southern (the "ALJ") held a telephone hearing on May 12, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 33-56.) A vocational expert ("VE") also appeared and testified. (*Id.*) On May 26, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-32.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to her conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III. ADMINISTRATIVE DECISION

On May 26, 2021, the ALJ issued her decision. (R. at 9-32.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 14.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 8, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with spondylolisthesis status post cervical fusion; mild degenerative changes of the sacroiliac joint; chronic regional pain syndrome; chronic fatigue syndrome; neuropathy of the right peroneal nerve; Lyme disease; Bartonella; history of deep vein thrombosis with chronic superficial thrombosis; migraine headaches; and, Reynaud's phenomenon. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] would be limited to four hours standing and walking and six hours seated (Footnote included in original: The impartial vocational expert testified that this residual functional capacity is consistent with a sedentary exertional range with the stand and walk four out of eight hours). When seated she would benefit from a footstool three to six inches high. She should be able to tolerate occasional ramps or stairs and should avoid ladders, ropes, or scaffolds. Frequent balancing, and occasional stooping, kneeling, crouching, and crawling. Occasional overhead reaching with the bilateral upper extremities and frequent reaching in all other directions with the bilateral upper extremities. Additionally, [Plaintiff] would be off task for 30 minutes of the day spread throughout the course of the day in increments of three to four minutes at a time.

(R. at 18.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a registered nurse and nurse practitioner. (R. at 24.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a sorter, addresser or table worker. (R. at 25.) The ALJ therefore concluded that Plaintiff has not been disabled since May 8, 2019. (R. at 26.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. **ANALYSIS**

Plaintiff raises two issues. First, she contends that the ALJ failed to provide a medical basis for deviating from the opinions of two treating physicians, primary care provider Francisco

5

Garabis, M.D. and neurologist Daniel A. Jones, M.D. Instead, according to Plaintiff, the ALJ impermissibly substituted her own medical judgment in place of the expertise of these physicians. (ECF No. 8 at PageID 712-17.) Plaintiff also argues secondarily that, at a minimum, remand is necessary because the hearing transcript contains inaudible sections impacting the ability to understand the hypothetical question posed to the vocational expert. (R. at 52.)

Despite Plaintiff's framing, the essence of her argument is that, in formulating the RFC, the ALJ did not build a logical bridge between her evaluation of the medical source opinions and the limitations she adopted. Plaintiff asserts that the ALJ fell short in her analysis as to two limitations: (1) the medically appropriate height for Plaintiff's leg elevation and (2) the frequency or duration of necessary breaks. As discussed below, the Undersigned finds Plaintiff's claim of error as it relates to the leg elevation limitation to be well-taken.[3]

With respect to Plaintiff's challenge to the ALJ's RFC determination, because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical

---

[3]This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Undersigned need not, and does not, address the alternative bases that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).  Although there are five factors, supportability and consistency are key, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).  And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*  If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors...." 20 C.F.R. § 404.1520c(b)(3).

The starting point for the analysis here is the opinion offered by Dr. Garabis.  That opinion indicates, in relevant part:

> She needs to elevate her legs throughout the day and avoid prolonged time of sitting/ standing in place for greater than 1 hour at a time. I feel this Medically Necessary because she has several medical conditions cause her having pain,

7

>   weakness and blood pooling, she will need to elevate her legs every 1-2 hours for at least 15-20 minutes at heart level as needed.

(R. at 501.)

The ALJ evaluated Dr. Garabis's opinion in this way:

>   The opinions of [Plaintiff]'s provider Francisco Garabis, M.D., are not entirely persuasive (Exhibit 35F). Dr. Garabis indicated that [Plaintiff] needed to elevate her legs throughout the day and avoid prolonged time of sitting and standing in place for greater than one hour at a time. He also indicated that she would need to elevate her legs every one to two hours for at least 15- 20 minutes at heart level as needed. While the undersigned has added a leg elevation limitation by way of allowing for the use of a footstool, the remainder of the limitations provided by Dr. Garabis are not supported by the record, including his own examinations of [Plaintiff]. Repeatedly, Dr. Garabis' examination notes show [Plaintiff] to have completely normal examinations, other than, very rarely, some pain or muscle spasm (Exhibits 12F; 25F; 46F). As discussed above, the remainder of the record also does not document [Plaintiff]'s venous issues/lower extremity blood pooling issues and swelling to the extent that she has alleged. Thus, the undersigned finds that the residual functional capacity herein appropriately accommodates [Plaintiff]'s impairments based on the evidence.

(R. at 23.)

As set forth above, the RFC formulated by the ALJ recognized that Plaintiff "would benefit from a footstool three to six inches high." (R. at 18.) Plaintiff argues that the ALJ seemed to accept the need for leg elevation but offered no explanation or support for her decision to modify the need for leg elevation from "at heart level" to a "footstool three to six inches high." The Undersigned agrees.

The vocational expert testified that an individual's need to elevate the legs at heart level would be work-preclusive. (R. at 54.) Thus, the determination of the height at which Plaintiff must elevate her legs is critical to analyzing Plaintiff's ability to work in this case.

As Plaintiff argues and the above excerpt confirms, the ALJ recognized the need for Plaintiff to elevate her legs throughout the day. To be sure, the ALJ did so within the context of finding Dr. Garabis's opinion "not entirely persuasive." (R. at 23.) However, the ALJ's explanation as to why she discounted his opinion is directed only to "the remainder of the limitations provided by Dr. Garabis," *i.e.*, the need "to avoid prolonged time of sitting/standing in place for greater than 1 hour at a time." (*Id.*) With respect to these sitting/standing limitations, the ALJ cited the lack of support in the record, including Dr. Garabis's own examinations, as a basis for discounting Dr. Garabis's opinion. Thus, the ALJ's discussion left unexplained her reason for rejecting Dr. Garabis's recommended limitation that Plaintiff elevate her legs to heart level.

The Court notes that, in connection with her evaluation of Dr. Jones's opinion, the ALJ broadly stated that "evidence does not support edema to the lower extremities to the extent the claimant has described." (R. at 24.) However, the ALJ does not connect this conclusion in any way to her reason for discounting Dr. Garabis's opinion that Plaintiff needs to "elevate her legs every 1-2 hours for at least 15-20 minutes at heart level." (R. at 501.) As a result, this observation by the ALJ provides no explanation for rejecting the recommended leg-elevation level when formulating the RFC limitation that Plaintiff "[w]hen seated [Plaintiff] would benefit from a footstool three to six inches high." (R. at 18.)

The Commissioner argues that notwithstanding the ALJ's silence on this precise issue, the ALJ's decision is supported by substantial evidence throughout the record. The Commissioner also characterizes Plaintiff's argument as "nothing more than a disagreement with how the ALJ

evaluated differing medical opinions." These arguments are not persuasive. Significantly, although the Commissioner focuses at length on other medical evidence in the record (much of it irrelevant to the central issue), there is no citation to evidence support the ALJ's elevation limitation of three to six inches.

Without question, the ALJ was not required to adopt verbatim Dr. Garabis's findings. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). But where, as appears to be the case here, an ALJ determines that an opinion or finding is persuasive and consistent with the record, the ALJ must incorporate the limitations in that opinion or finding or provide an adequate explanation for declining to do so. Thus, it is equally well settled that an ALJ's decision "must say enough 'to allow the appellate court to trace the path of [the ALJ's] reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). The ALJ simply did not say enough here.

The ALJ's failure to articulate her reasons for discounting Dr. Garabis's opinion as to the height at which Plaintiff needs to elevate her leg prevents the Undersigned from determining whether the ALJ's reasoning or conclusion is supported by substantial evidence. Because the Court cannot trace the ALJ's path of reasoning or discern why the ALJ limited Plaintiff to elevating her leg only three to six inches rather than the recommended heart level, remand is required. *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021) ("[B]y failing to explain why certain limitations were not incorporated into the RFC, an ALJ prevents the reviewing court from conducting a meaningful review to determine whether substantial evidence supports his decision."); *Lindsey v. Comm'r of Soc. Sec.*,

10

No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) ("[T]he ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision."); *see also Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Because the ALJ did not provide an analysis that is sufficiently specific, [Plaintiff's] argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning."); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:** **March 6, 2023**   /s/ *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　　**Elizabeth A. Preston Deavers**
　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**